Council, please. Thank you, Your Honor. Good afternoon, and may it please the Court. It's probably appropriate that we're having oral argument on a tattoo case on on Valentine's Day. I'm sure there are people out there getting hearts tattooed on themselves with the names of various people. I just hope the relationships are more durable, as durable at least as the color does. It's a dangerous thing to get anything except mom tattooed on your arm. It's a good thing Father Boyle's not here. You know who I'm talking about? What's that? Father Boyle, who works at the... Oh, right, right, sure. And he he takes the tattoos off before the young men from the gangs can work in the bakery, so it's kind of a reverse art, I guess. Well, at all the tattoo conventions, there's a booth for Dr. Tattoff, who is a tattoo artist, and it costs about four or five times as much to get take one off as... We'll let you start fresh here, but anyway, we want to give you the full chance to show us the art that you have practiced lo these many years, so... Well, I have, Your Honor, and my first case in front of the Ninth Circuit was about 40 years ago, and it was an appeal from the same judge, and I got that judgment reversed. I'm hoping to have the same luck today. This is a suit to two aspects of the Long Beach Tattoo Zoning Ordinance. First of all, there's a requirement that anybody who wants to do tattooing in the city of Long Beach obtain a conditional use permit, and the second requirement is that it has to do with the location and the proximity of tattoo shops. They they're only allowed in a very small percentage of the commercial districts in Long Beach. They have to be a thousand feet from each other. They have to be a fortune-telling establishments, and they have to be a thousand feet from taverns, and these issues were presented to the trial court three times. There were two motions for summary judgment, and then there was a short trial, and the issues are purely issues of law, which should be decided by this court in favor of the appellant. Let me ask you this, counsel. Judge Real... We've got a Real Party and a not related. I understand, that's right, but in any event, as I understand his ruling, he did his ruling on the basis of standing with respect to both the facial and as-applied challenge. Is that your understanding as well? That's correct, Your Honor, although he did classify the conditional use permit requirement as a time, place, and manner rule, which it is not. But before we get to that, since he did have a trial, but the city had no opportunity to put on its defenses, if, arguendo, if we agree with you that... Is it Real or Real? How do you say it? I say Real because I just like... I don't have to remember one pronunciation. We'll keep things real then. So if we find that Mr. Real has standing, I assume... You're suggesting that basically we could just decide this, but wouldn't we have to send it back? Because how can it be fair for only one side to have presented its case-in-chief and not the other side, since some of these allegations could be susceptible to time, place situations where the city would have an opportunity to present its material. Isn't that correct? I don't believe it is, Your Honor, with all respect. First of all, the conditional... There are aspects to it. The conditional use permit requirement is easier because a conditional use permit, as a requirement to engage in speech, has never been upheld when the conditionals... when the conditions in the permit ordinance are the kinds of conditions that are in the Long Beach ordinance. All the terms in the ordinance are extremely vague about whether it's reasonable, whether it's compatible with the public interest, whether it promotes the health, safety, and welfare of the city. These are exactly the kinds of standards, quote unquote, that have been struck down repeatedly by the U.S. Supreme Court. But in order for the court to determine whether the zoning ordinance is narrowly tailored to fit a significant government interest, doesn't the city have an opportunity, or shouldn't it have an opportunity, to present its argument in that respect? Well, that aspect of it, as I The first one is the permit application. That, I think the court has everything it needs to decide. And I think the court has everything it needs to decide the other issue, too. This is a complicated dance when it comes to the burden of proof. And the city of Long Beach had the burden of proving that there is a justification for this ordinance that restricts the areas and restricts the proximity. And it had the opportunity to do that in response to both summary judgment motions. And it has never offered any evidence of any kind, or any legislative history of any kind, to show that there are any secondary effects. It didn't have to. Pardon? It didn't have to. It won on an on-suit. Well, it had to in response to the summary. And let's, if Judge Real had not issued the decision at the end of the plaintiff's case, then there would have been occasion for the defendant, for the city, to try to show what you're suggesting. But they didn't have to do anything. And they take the position in their brief here that we don't have to say anything on this issue. The brief doesn't defend the the First Amendment aspects of the case. Well, it only addresses standing. As far as the trial is concerned, but the exact arguments, the exact legal issues were put forward in the summary judgment motions. And although the summary judgment motions were not separately appealable, the city had every opportunity to justify its ordinances and failed to do so. And I don't think it's necessary for this. They didn't have to do it, because Judge Real took the case away from the city. Not in the summary judgment motions. It had the opportunity in rebutting the plaintiff's claim. He held there was no standing. That was at the trial. But before that, there were two motions heard for summary judgment. He held that there was a case that was set forth. He denied those motions and he denied the summary judgments. He did all those things, but I think that the issues with respect to both aspects of the ordinance are issues of law. I submitted a supplemental authority to the court, a case that was just decided last August by Judge Wilson. Well, Judge Wilson's decision is a good one, but there was also a case out of Oceanside called Yvonne, Y-V-O-N, versus City of Oceanside. And Judge Battaglia, in that case, analyzed the standing, analyzed the process that the court goes through. Let me put it this way. Let's assume that the city did not present its arguments. Are those arguments of a nature that we, as a court of appeals, can decide without a record? Yes, I think both issues. I think the record here, these tattoo ordinances were adopted with no supporting evidence. And that's clear from the record the court has about the ordinances and the history of the ordinances. There was no justification for limiting the areas where tattooing could be located. And the reason for that was that at the time those ordinances were adopted, tattooing could be put up anywhere. I think tattooing should be regulated as any real retail establishment. That is, you look at the intensity of the use, you look at how many people go there, how long they stay, how much parking do you need. You have regulations about signage. You have health regulations to make sure it's done in a sanitary manner. But I believe very, I don't, there's a negative connotation that attaches to the word tattoo that's obsolete. Most, many cities, Los Angeles is the closest example that I'm familiar with, San Diego is that way too, have no restrictions on tattooing other than that they be located in a commercial district. It could be a barber shop or it could be a tattoo shop. Your argument is that as a matter of law, we can hold that there is no time, place, or manner aspect of this regulation that deserves any deference at all? Not in the way it was enacted, because unlike the history here and the cases that shine light on this issue. Without a record. Pardon? And we could do so without a record. The record is the ordinance themselves and the legislative history of those ordinances, which is before the court and shows no specific findings that support these regulations. And in the First Amendment area, with the adult businesses, which is the, where this law comes from, and it, you know, something that we've moved past in many ways, but when the adult bookstores were being regulated, the first thing the court said is you can't have a conditional use permit. They decided that as a matter of law, that's been held up, upheld by the Supreme, the Supreme Court many times by the Ninth Circuit. Then they looked at time, place, and manner. And with adult businesses, they looked at the so-called secondary characteristics. And in cases like Young versus American Mini Theaters and Renton, the court found that the municipalities were justified in restricting the location of adult businesses because they caused specific harms that were articulated before the laws were passed. That is, with adult businesses, there were prostitution arrests, there was sexual paraphernalia thrown away in the neighborhood, that kind of thing. That it had an impact on the neighborhoods where they were located. Crime reporting went up, and so on, and so on, and so on. Those specific findings justified the limitation of those businesses to certain parts of cities, and that's been upheld. That's settled law. With tattooing, that has not been established. There are no secondary effects of tattooing. People may not like tattooing, people may not like video. Pardon? Is that because they don't exist, or because the city had no opportunity to present what it believed were contrary views? Well, I don't know of any, I don't know of any evidence that they exist. Certainly the cities that allow tattooing, like the city of Los Angeles, you know, tattooing is just a business. There's a limited number of shops that will open, some will survive, and some won't. When it comes to free speech, the artist should be the one who decides where to locate to reach his audience, not the city. I don't think you're answering my question. You suggest that as a matter of law, there's just nothing out there. Nobody's said anything before, and as a matter of law, courts have adopted this proposal, and there's nothing for the city to say. You may be right about whether the city has something to say, but doesn't it have a to say, you know, we have found that tattooing results in X, Y, and Z. I'm not saying they're going to, or that they couldn't, or could, I just don't know, but they haven't had a chance to present its position. Well, there are a couple of Ninth Circuit cases which are analyzed in the Yvonne case that I talked about. One is Alameda Books, which I cited in my brief, and the other is Center for Fair 36, Fed 3rd, 1153, and those cases talk about the shifting burdens of proof that exist in deciding whether a particular zoning ordinance passes constitutional muster, passes First Amendment scrutiny, and the Yvonne case spells out very clearly that you can, the city can only use post-enactment justification for a has a pre-enactment justification for the law, but here there is no pre-enactment justification, so the law has to go, and then the city might come back with a replacement law, and then we'd be involved in a much more complicated process of deciding where tattooing can be located, but at least initially, this city cannot use current evidence, if it has any, and we haven't heard of any, but it can't go back and prove, well, we have these problems, or we imagine these problems exist, and therefore the previously enacted law is justified. You can't restrict speech based on speculation and supposition. You have to have concrete reasons, and that's why the adult zoning ordinances are upheld, is because those ordinances were supported by past experience. They didn't have to be the experience of the particular location where the ordinance was adopted, but there were experiences in other cities that were used by cities in Yes. There are a couple cases that you cite in your briefs, understandably City of Lakewood and Susan B. Anthony, and I saw Lakewood, City of Lakewood being cited in your briefs to the district court. I didn't see the district court ever address that case, did it? I don't think the court did. The court was adamant that because Mr. Real didn't apply for a permit, he didn't have standing to challenge the ordinances. But I didn't see anyone in the order, the district court, explaining why cases like City of Lakewood or Susan B. Anthony, why he could still go that way without addressing those cases. Did I miss something in the order? I don't think he addressed them. Okay. Want to save any of your time for rebuttal or not? I'll save what I have left. All right. Thank you. Clear from the city. So, good afternoon and may it please the court, your honors. I have no tattoos. I'll make that disclosure up front. We're hoping you would, actually. The court has it absolutely. The court has it that the court, the city made during trial, it was the state equivalent of a non-suit motion, Rule 52C, and that's what we're appealing here. Now I heard counsel talk a lot about summary judgment and the non-availability of an appeal for summary judgment. Certainly at the time the court granted the city's 52C motion, had the appellant wanted to appeal the summary judgment motions and brought before this court the constitutionality of the ordinance, it could have, but it didn't. It only challenged Judge Rial's decision that no standing existed. So that is the issue that's before this court. And it said more than that. It just, 14 to 17 of its brief, the latter part, anyhow, talked about the right without a permit. It says, many state and federal cases have considered conditional use permit requirements of First Amendment protected businesses. And although a conditional use permit may be required if the criteria for its issuance are sufficiently precise, no court has upheld an ordinance like that in Long Beach. Do you have an answer to that? Well, certainly the city has a showing that this is a content-neutral ordinance. I don't think that's disputed. It has to show that there are alternative channels of expression. That's not disputed. The plaintiff himself or the appellant himself testified that there were a number of tattoo parlors. What purpose, what municipal purpose is advanced by these conditional use permits? Conditional use permits advance the municipal value in compatible uses. I think at the end of the day, which was a compatible use. Well, would your honor appreciate a gas station next to your house? Clearly not. Would a school appreciate a medical marijuana? How about commercial zoning? Right. But, but commercials are talking about mixing into a residential neighborhood. We're talking about commercial zoning. What, what's different about a tattoo business from any other business? Well, the city has... That's what you have to answer. Right. And had the city had the opportunity to put on evidence of the third prong, which is that it has a significant government interest, it would have put it on that... An interest to be so far distant from a fortune teller? What's the connection between fortune telling and tattooing? What's the connection between a tavern and tattooing? Yeah, I don't know. I think that would have been the subject of proof at the time of trial, had the city had an opportunity to present that evidence. What's before this court is not the propriety of the statute or the ordinance, but whether this particular appellant had standing. What's the justification of an $8,000 non-refundable application? Well, again, your honor, I hate to say I don't know, but I don't know because I'm not the trial attorney and I wasn't prepared to put that evidence on at time of trial. But that was evidence that certainly the city would be prepared to address had Judge Real required or allowed the city to put on its case. When you made a motion for summary judgment, you had to answer those questions. That's true. So we made a motion for summary judgment and again, I wasn't the author of the motion for summary judgment. What's before this court and what I'm focusing on is the issue of standing because that was the judge's order at the district court level. That was the basis of the 52C motion and that I think is a seminal issue before the court, is whether they're standing before this court. I want to get back to the cases referred to by Judge Owen. Let's start with the facial challenge. What's the city's response to Santa Monica Food, Not Bomb versus City of Santa Monica and City of Lakewood versus Plain Dealer Publications as far as the standing argument regarding a facial challenge? Why don't those cases solve that problem here and award standing, if you will, acknowledge standing to the plaintiffs in this case? Thank you, your not a facial challenge. The court found that it was an as-applied challenge. It took evidence on that matter. It permitted the appellant to present evidence as to that matter and it made a factual determination, which I submit that this court should not question or second-guess the factual determinations of the district court. District court said it was an as-applied challenge and consequently, neither of the cases cited would apply. But generally speaking, the an appellant or prospective plaintiff has not taken an advantage of a particular ordinance or an application process. The courts have all looked to whether there's been some injury and that could be even a change in position. For example, in the Santa Monica case, the court found that in that case, those plaintiffs did suffer an injury, a concrete injury, because they went to a different location to protest. In Susan B. Anthony, it's a completely different situation because the plaintiffs in the Susan B. Anthony case faced the very real possibility of a criminal prosecution simply by acting on its First Amendment's rights, which is not comparable here. Let's go back to the facial challenge for a second. My reading of these cases suggests that where a city has unbridled discretion, that is a facial issue. It affects everybody. Why does that not make this ordinance one that is subject to a facial challenge? This ordinance does not permit unbridled discretion or unfettered discretion on the part of the Planning Commission. In fact, the Planning Commission's decisions are... What limits them? Well, two things limit them. First, any decision by the Planning Commission is appealable as a matter of right to the City Council. That doesn't answer this question, though, does it? It does, I with the law and have those findings published. And if the appellant or the plaintiff is dissatisfied with the appeal to the City Council, it's appealable to the Superior Court on a writ under 1095.4. But where did the District Court engage in the analysis you just described? It did not. Isn't that a problem? I mean, I understand your argument, but what are we basing it on here, on this record? Well, I go back to the District Court's factual determination that this is an as-applied challenge. So it's difficult for me to argue to the court that it should analyze the case or the District Court should have analyzed the case as a facial challenge and then defend its failure to do that because it analyzes... I'm sorry, go ahead. No, no, no, fair enough. But where did the District Court say what you just said, that this is not facial, it's as-applied, and actually addressed the unbridled issue that the plaintiffs were raising here? It did not address the unbridled or the alleged unbridled or unfettered discretion of the Planning Commission in enforcing this ordinance. But what it did say was that there was no evidence that the plaintiff presented that anybody else had suffered any harm as a result of this tattoo ordinance, i.e. could not start a tattoo business. And in fact, the evidence, the laconic evidence that the plaintiff presented at the time of trial was that there were a number of other tattoo parlors he was aware of. And in fact, he had the opportunity to open a tattoo parlor that he didn't avail himself of simply because he didn't want to compete with a friend of his. They were grandfathered. I beg your pardon, Your Honor? They were grandfathered into existence. It's a different situation. I don't think that's correct, though, Your Honor, because the tattoo... during the course that led up to this lawsuit, when Mr. Rowell was contacting the City Council and the City Attorney's Office, he made inquiries about opening a tattoo party in what's called the Arts District in Long Beach. At the time, it was not zoned for tattooing. Later, it was zoned for tattooing, and that's when the Paper Crane Company Tattoo Parlor began its operation in the very location where the appellant originally said he wanted to be and then changed his mind and said he didn't want to be. He didn't want to be there because he couldn't compete with the people that moved in. But what's that begs the question we've been asking? What are the criteria? What should be the criteria if it's just any old business? We see statistics, and they're quoted in Judge Bybee's decision. Forty percent of Americans over 25 and below 40 have tattoos. There are a number of... So it's not a clandestine business anymore. And of course the city is not suggesting that it is. The city is actually very tattoo friendly. I think that should be clear from this record, and it should be clear from the record... Clear to me? Okay. I'm not coming here anyhow. Well, come to Long Beach, Your Honor, and we'll set you up. There are a number of tattoo parlors operating in Long Beach. There are a number of businesses that are required to participate with the also get a conditional use permit. So a conditional use permit is not necessarily an onerous burden placed on businesses. It's merely an attempt by the city to ensure that there is not incompatible uses. There's not saturation of businesses in particular locations. This is your point that you have... You should have had an opportunity to develop the record. Yes, Your Honor. I have two points. The first point, of course, is that we prevail on the standing issue because plaintiff, assuming that this court accepts... Of course, Judge Rial made a good decision on standing. Yes. The second point is even if he didn't, we don't have a chance to combat the First Amendment points. I would agree with it, Your Honor. That's the city's position, that if this court views Judge Rial's... So what should... Let's suppose we want to reverse on the standing issue, and let's suppose we take your argument that you should develop an opportunity for a record. What's the impact on the plaintiff? He's got maybe a lease with some space. He doesn't know if he can get a lease because he's got to pay $8,000 non-refundable to the city. He's out how many years since he first made application. Should we consider any equitable remedy to the plaintiff in the meantime? The equities fall squarely on this part of the city, Your Honor. This Your answer is no. The answer is no, Your Honor. I mean, this plaintiff is... The whole theme, I think, of the respondent's brief was that standing urges this court not to engage in constitutional arguments or constitutional decisions when none is necessary, and none is necessary here. Had Mr. Rial applied as he was urged to apply for a conditional use permit... If we believe that there was standing, that was my question. What should we do? Should we remand back to the district judge to make findings on the First Amendment point? Yes. And what about the position of the plaintiff in the meantime? If this court is inclined to disagree with Judge Rial regarding standing, it has to remand it back because that's the only issue before the court. The city has to be given the opportunity to demonstrate that a significant government interest is being advanced. All of the cases say that that is not a difficult burden to show. It's not an overwhelming burden, and we should have that opportunity to do that in the event that this court decides standing. The Supreme Court was in Anderson against... wrong one... in the city of Lakewood against Plain Dealer, was very much concerned about the marginal plaintiff wishing to take advantage of his First Amendment rights to express himself and being deterred by legislation that made it difficult, that placed impediments on the path, and that would drive out the marginal plaintiff wishing to express himself. Justice Brennan was very much concerned about that issue. Should we have that kind of concern for the plaintiff here? No, Your Honor. The plaintiff, I think as a record was developed, the plaintiff was given every opportunity to avail himself of the expectation that he would be given a commissional use permit. In fact, the city all but said, you apply, you'll get it. This plaintiff wanted a constitutional challenge. That's the area for an area where he didn't want to go. Well, he did want to go to that area. He changed his mind. Well, someone else went in ahead of him, and he didn't want to compete, and he couldn't compete. We don't know that he couldn't compete. He said it was a friend of his, and he didn't want to compete against a friend of his. He didn't say that he couldn't compete or didn't have the opportunity to run a profitable business, but it was certainly in the exact area that he originally said he wanted to be at. Thank you, Your Honor. Oh, do I have more time? Well, I'm not out of time, but you don't have to keep going. I'm out of bonus points. There's no bonus points for your time. I could keep going, but I think I've done what I needed to do. Any other questions by colleagues? Thank you very much. Counsel, you have a little bottle of time left. I would ask, first of all, that if the court is inclined to grant, to reverse on grounds of standing, that it at very least reach the conditional use permit issue and issue injunctive relief against the application of these ordinances against my client. You're back to your position. You need to decide the case. There's no point in sending it back, but if we're going to send it back, you want us to reverse it and apply the injunction anyway. I want, yes, that's true. And I just want to clarify one thing. In terms of the notion, Judge Riehl was quite unhappy about the fact that he portrayed my client as having a Burger King attitude. He wanted it his way, but in fact, when my client originally was looking at areas, there were three shops, three specific locations that he had talked to landlords and they were suitable to him. One of those was in the area that was eventually opened up to tattooing, and I think the court is correct. He didn't want to, it wasn't so much competition as not wanting to step on somebody's toes, but their testimony is clear that there's an area called Retro Row where he really wanted to locate, and that goes along with his artistic style. He has retro tattoo style. But anyway, the main point is that the conditional use permit requirement cannot be defended. There is nothing that could make that constitutional. Let's suppose we disagree with that and remand. Is there any kind of equitable remedy you think we can give you, or does that have to go to the district court? Well, I think, no, I think that the court has the power to grant an injunction, and should do so pending further proceedings in the district court, and I would also respect... What would be the rationale? Well, as I say, I think unless, if we don't prevail, if the court believes that we don't prevail as a matter of law on either issue, then I think it would be more difficult. I think on reflection, the court should determine that at the very least, a conditional use permit can't be required, even if the locational restrictions are subject to further examination, which I don't believe they should be. But the case can be split into two parts, and at least as far as the use permit is required, that should be enjoined immediately, so that other people who want to tattoo in areas where it's now allowed won't have to go through that unconstitutional process. Is it your position that no conditional use permit can ever be required of someone who's creating art and a business that is involved in creating art? Not when there's a First Amendment issue involved. The courts have repeated the condition here is the proposed use will not be detrimental to the surrounding community, including public health, safety, general welfare. Let's look at this. LA County has a big art museum, very big. There's very little parking there. Now they've done some more to try to do something. You're saying that the city could not say, you know, you're involved in displaying art here, but you can, we're not going to restrict the number of cars you can have there, and it doesn't matter what effects it has on the neighborhood, because it's art you're talking about. That can't be right. If I said that I didn't intend to, the city may impose conditions of various, this is also true in the adult business area, things like signage, parking, hours of operations within reason. There are a list of conditions that can be imposed. The key is that they be neutral. I mean, they'd be objective and specific, precise. The city probably argues that they are, but you're, so you're not saying now that you can't have a CUP when a tattoo parlor is involved? No, no, you absolutely can, but you can't have this one. You can't have one that gives the city unbridled discretion. Is there any other? If we voided this one, is there another one to take its place? No, the city would have to enact one, but the city could list conditions if it listed, you know, they do that for all businesses. In order to get a business license, you have to show you have a certain number of parking spaces. It's not a discretionary process, it's a checklist. Do you have enough parking? Do you have enough bathrooms? Do you have this? Do you have that? For each kind of business, they have a checklist. That's fine, but that's not this. This is a many-tiered discretionary process. You have to spend a lot of money to go through it. You have to prepare plans. You have to have planning review. It's expensive, and it should not burden First Amendment speech with that kind of rigmarole. Any other questions on my colleague? We thank you both for your argument in the case. The case just argued is submitted.
judges: M. Smith, Owens, Hellerstein